**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCHOOL EXCESS LIABILITY JOINT INSURANCE FUND, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civil Action No: 20-4951(SDW)(LDW)<br><br>**OPINION**<br><br><br>January 26, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendant Illinois Union Insurance Company's ("Defendant") Motion to Dismiss Plaintiffs School Excess Liability Joint Insurance Fund ("SEL"), Diploma Joint Insurance Fund ("Diploma"), and School Alliance Insurance Fund's ("SAIF") (collectively, "Plaintiffs" or "the Funds") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **DENIED**.

### I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are Joint Insurance Funds ("JIFs") created pursuant to N.J.S.A. 18A:18B-1 *et seq.* (D.E. 10-2 at 1-2 ¶¶ 1-3.) A JIF is a public entity comprised of "members," such as cities, townships, boroughs, or school districts, who pool resources to self-insure against losses for claims up to a specific amount ("retention" or "retained risk") and purchase excess insurance from

1

insurance companies to cover losses that exceed that amount. Defendant is an insurance company that "issued multiple policies of excess insurance" to Plaintiffs from July 1, 2008 through July 1, 2012 (the "Policies") which indemnified Plaintiffs for set amounts over their retained risk. (*Id.* at 2-3 ¶¶ 1-4, D.E. 10-3 (Schedule of Insureds Endorsement), 10-4, 10-5, 10-6.)

The Policies provide that Defendant will pay the "Ultimate Net Loss in excess of the Underlying Coverage that the Insured becomes legally obligated to pay as damages because of the injury or damage to which this insurance applies." (D.E. 10-4 at ACE0240.)[1] Ultimate Net Loss is defined as "all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this Policy . . ." and "includes reasonable defense expenses[2] . . . when Underlying Coverage includes defense expenses within the Limits of Insurance." (*Id.* at ACE0241.)[3]

Underlying Coverage is defined as "the policy or policies of insurance, or coverage documents as described in the Declarations and Schedule of Underlying Coverage." (D.E. 10-4 at ACE 0241.) However, because Plaintiffs "are not insurance companies but rather by statute are 'self-insured,' i.e. without insurance," Plaintiffs have no Underlying Coverage. (D.E. 10-2 ¶¶ 25-26, 7-11; *see also Borough of Westville, N.J. v. City of Phila.*, 89 F. Supp. 3d 636, 640 (D.N.J. Mar. 3, 2015) (recognizing that "[j]oint insurance funds are explicitly *not* insurers under New Jersey law"); N.J.S.A. 40A:10-48 (providing that a JIF "is not an insurance company or an insurer

---

[1] Because the relevant provisions of the Policies are identical across all four policies, for ease of reference, this Court generally cites only to Policy No. PEP G19850638, effective July 1, 2009 through July 1, 2010, (D.E. 10-4), for the Policies' contractual terms.

[2] Defense expenses are also referred to by the parties as "allocated loss adjustment expenses" or "ALAE." (*See* D.E. 18 at 4.)

[3] It follows, therefore, Ultimate Net Loss does not include defense expenses if "the Underlying Coverage provides defense expenses in addition to the Limits of Insurance." (D.E. 10-4 at ACE0240-41.)

under the laws of [New Jersey], and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business").)  Rather, Plaintiffs pay liability costs and defense expenses out of their pooled resources and Defendant's obligations under the Policies are triggered "when the Insured[s] pay the amount of" their retained risk, either as to individual claims or in the aggregate. (D.E. 10-2 ¶16.)  The Policies provide coverage for, *inter alia*, General Liability, which Plaintiffs plead encompass sexual abuse claims, and also specifically identify limits of insurance for "sexual abuse" in the Schedule of Underlying Coverage. (D.E. 10-2 ¶¶ 14, 20, 24, 45; D.E. 10-4 at ACE0238.)

On March 17, 2020, Plaintiffs filed a two-count Complaint in the Superior Court of New Jersey, Law Division, Essex County for breach of contract and breach of the duty of good faith and fair dealing, alleging that Defendant failed to indemnify Plaintiffs for $4,051,129.00 in defense expenses generally and amounts paid for liability and defense expenses for sexual abuse claims. (*See generally* D.E. 10-2.)  Defendant removed to this Court on April 23, 2020 and subsequently moved to dismiss.  (D.E. 1, 10-9.)[4]  All briefs were timely filed.  (D.E. 14, 18.)

## II.    LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty.*

---

[4] Defendant's reply papers also alternatively request that Plaintiffs' bad faith claim be severed and stayed. (D.E. 18 at 13-15.)

3

*of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A.

As an initial matter, this Court's review is limited to the facts as alleged in the Complaint and "documents explicitly relied upon or incorporated by reference in . . . or integral to the Complaint." *Senn v. Hickey*, Civ. No. 03-4372, 2005 WL 3465657, at *2 (D.N.J.Dec. 19, 2005); *see also In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting that generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss, but may "consider certain narrowly defined types of material without converting the motion" to

one for summary judgment); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (limiting that material to "document[s] integral to or explicitly relied upon in the complaint") (internal citations omitted, emphasis in original). The issue currently before this Court is whether Plaintiffs have sufficiently pled that they incurred losses that eroded their retained risk and, consequently, triggered coverage under the Policies. Because the Polices are integral to and relied upon by the Complaint, this Court may consider them on a motion to dismiss. Review of other extraneous materials mentioned in the Complaint, discussed by the parties in their briefs or submitted as exhibits to those briefs, such as: Plaintiffs' contracts with their members, communications from underwriters, the underwriting file, Defendant's conduct with regard to other policies, and/or statements made during the negotiation of the Policies, is inappropriate at this time. Those materials raise questions of fact that may only be resolved after appropriate discovery is conducted and are beyond the scope of this Court's review at this stage of the proceedings.[5]

B.

In order to adequately state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)); *see also Mid-American Salt, LLC v. Morris County Cooperative Pricing Council*, Civ. No. 17-4262, 2018 WL 999675, at *3 (D.N.J. Feb. 20, 2018);

---

[5] This Court takes no position on the propriety of submitting those materials should the parties later move for summary judgment.

*Riachi v. Prometheus Grp.*, Civ. No. 17–811, 2017 WL 2438838, at *2 (D.N.J. June 6, 2017). Because there is no dispute regarding the first and third elements of the analysis, this Court need only address whether Plaintiffs have sufficiently pled that Defendant has breached its obligations under the Policies by refusing to indemnify Plaintiffs for claims submitted for 1) defense expenses generally and 2) liability and defense expenses for sexual abuse claims specifically.

As to defense expenses generally, the Policies provide that Defendant will indemnify Plaintiffs for amounts "in excess of the Underlying Coverage that [Plaintiffs] become[] legally obligated to pay as damages" which include "reasonable defense expenses . . . when the Underlying Coverage includes defense expenses." (D.E. 10-2 at 3 ¶¶ 3-6; D.E. 10-4 at ACE0240.) In this case, Plaintiffs assert that their "Underlying Coverage" is not a separate insurance policy, but rather, pooled funds that Plaintiffs use to pay defense and liability claims up to the amount of their retained risk. By self-insuring, they necessarily bear the burden of paying defense expenses because there is no way to exclude them. The Complaint, therefore, adequately pleads that the Policies require Defendant to indemnify Plaintiffs for defense expenses.[6]

As to whether sexual abuse claims are covered, the Policies' Lines of Coverage include "General Liability," which Plaintiffs plead includes sexual abuse claims. ((D.E. 10-2 at 6 ¶¶ 14, 20 (asserting that sexual abuse claims are "accepted within the insurance industry" to "fall within the category of 'General Liability'"); D.E. 10-4 at ACE0241; D.E. 14 at 13.) The Policies also

---

[6] Defendant asks this Court to review agreements between the Funds and their members, which it argues excludes defense expenses from indemnity. (*See* D.E. 10-9 at 10-13, 18-20.) Plaintiffs contend, however, that those documents are "irrelevant to the coverage under the [Policies], and therefore bear not at all on their construction." (D.E. 14 at 9.) Those collateral agreements are not referenced in the Complaint and, therefore, will not be considered for purposes of the instant motion to dismiss. The relationship of those documents to the Policies, if any, is a question for summary judgment.

6

define sexual abuse[7] and identify aggregate limits for sexual abuse claims. (*See* D.E. 10-2 at 6 ¶ 21-23, at 9 ¶ 32, at 10 ¶ 37, at 11 ¶ 42; D.E. 10-4 at ACE0238-39.) Looking solely at the Complaint and the Policies and "accept[ing] all factual allegations as true, constru[ing] the complaint in the light most favorable to the plaintiff, and determine[ing] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," *Phillips*, 515 F.3d at 231, Plaintiffs have sufficiently alleged that sexual abuse claims are covered by the Policies, and that their payments towards those claims have eroded their retained risk and triggered Defendant's indemnification obligation.[8] Defendant's motion as to Count One will be denied.

C.

Under New Jersey law, in order to bring a successful bad faith claim against an insurer, an insured must show: "(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett v. Lloyds,* 621 A.2d 445, 454 (N.J.1993)). Plaintiffs allege that Defendant failed to "act in good faith in their assessment of the terms and conditions of [the Policies]" and failed to reasonably "assess communications exchanged during the course of negotiations between representatives of the parties, assess the statements of their own underwriters, assess the underwriting documentation, or assess principles of law and accepted construction of the terms of art within the [Policies]. (D.E. 10-2 at 14 ¶¶ 57-58.) This is sufficient to permit Plaintiffs' claim

---

[7] Sexual abuse is defined as: "any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, which causes physical or mental injuries." (D.E. 10-2 at 7 ¶ 23.)

[8] This Court takes no position as to whether Plaintiffs will ultimately succeed on the merits of their claims. That determination can only be made after discovery is completed.

to proceed. Defendant's motion to dismiss Count Two will be denied.[9]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate order follows.

                                        /s/ Susan D. Wigenton
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:          Clerk
cc:           Leda D. Wettre, U.S.M.J.
               Parties

---

[9] Defendant requests, but has not formally moved, to stay and/or sever Plaintiffs' bad faith claim. (D.E. 18 at 13-15.) Defendant's goal, "avoiding discovery into the bad faith claim—if appropriate, can be accomplished by staged discovery without severing the claim entirely." *Mercury Indem. Co. of Am. v. Great N. Ins. Co.*, Civ. No. 19-14278, 2020 WL 1531386, at *5 (D.N.J. Mar. 31, 2020). Defendant may raise any discovery-related requests before the Honorable Leda D. Wettre, U.S.M.J., at the appropriate time. Therefore, Defendant's request to stay or sever Plaintiffs' bad faith claim is denied.